Jonathan O. Hafen (6096) (jhafen@parrbrown.com)
Michael S. Anderson (13976) (manderson@parrbrown.com)
Victoria R. Luman (16092) (vluman@parrbrown.com)
W. Ash McMurray (16899) (amcmurray@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah  84111
Telephone:  (801) 532-7840

Attorneys for Imaginarium, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IMAGINARIUM, LLC, a Florida limited liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION, and ISABELLA CASILLAS GUZMAN, Administrator, United States Small Business Administration,<br><br>        Defendants. | **COMPLAINT**<br><br>Case No. 2:21-cv-00752-TS<br><br>Judge Ted Stewart<br><br>**Jury Demanded** |

Plaintiff Imaginarium, LLC ("Imaginarium") hereby files this Complaint against

Defendants United States Small Business Administration and its Administrator Isabella Casillas

Guzman ("Administrator Guzman" and, collectively with Defendant United States Small

Business Administration, "SBA"), and for its claims alleges as follows:

## INTRODUCTION

1.      Imaginarium brings this action pursuant to federal common law, the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking emergency federal financial assistance unlawfully withheld by the SBA.

2.      The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("Act"), as amended, 15 U.S.C. § 9009a, established the Shuttered Venue Operators Grant ("SVOG") Program, which is administered by the SBA, to provide assistance to eligible live-entertainment businesses impacted by the pandemic.

3.      Imaginarium, a small live-event production company domiciled in Utah that operates and promotes events in California, Florida, Georgia, Indiana, Michigan, and Wisconsin, demonstrated its eligibility for an SVOG award in its SVOG application to the SBA submitted on April 26, 2021 ("Application").

4.      In confirmation of its eligibility, the SBA approved Imaginarium's Application in the amount of $1,611,445.16 with a term start date of July 13, 2021, and a term end date of December 31, 2021.

5.      Imaginarium received no fewer than three separate communications from the SBA indicating that its Application was approved: a July 13, 2021 notification through Imaginarium's online application portal ("SVOG Portal"); a July 14, 2021 email ("Congratulations once again on your Shuttered Venue Operator's Grant"); and a July 30, 2021 email ("Congratulations! Your Shuttered Venue Operator's Grant is approved.").

6.     The SBA also listed Imaginarium on no fewer than two separate publications as an SVOG recipient on July 19, 2021, and July 26, 2021.

7.     On July 30, 2021, the SBA issued Form 1222, Notice of Award to Imaginarium, confirming the total approved budget amount of $1,611,445.16 and providing instructions to Imaginarium for receiving disbursement of the awarded funds.

8.     Imaginarium immediately confirmed the award, executed, and returned its signed Form 1222.

9.     In reliance on the SBA's approval and confirmation of the award, and with knowledge of the date by which funds must be used pursuant to the award requirements, Imaginarium spent funds pursuant to their approved award with the understanding that the funds would be disbursed shortly.

10.     Despite the SBA's clear and unambiguous approval of Imaginarium's Application, on August 14, 2021, after Imaginarium had spent awarded funds in reliance on the SBA's Notice of Award, Imaginarium received notice that it could appeal the "decline decision" of its application by August 29, 2021.

11.     The SBA provided no basis for its purported "decline decision," leaving Imaginarium to speculate as to the basis for the purported "decline decision" in its appeal.

12.     On August 27, 2021, Imaginarium filed its appeal of the "decline decision" with the SBA.

13.     On October 27, 2021, the SBA notified Imaginarium that after review of Imaginarium's appeal, the status of Imaginarium's Application remains declined.

14.     Imaginarium shares certain owners with the Utah entity that operates the "FanX Salt Lake Comic Convention" ("FanX"), which has an estimated total economic impact of more than $30 million to the State of Utah.  As such, Imaginarium's operations not only benefit the jurisdictions where its events occur but also now benefit the State of Utah.

15.     Having been awarded and told to spend grant funds only to then have disbursement of those awarded funds refused by the SBA without explanation, Imaginarium has filed this action only as a last resort in order to regain access to these critical grant funds it should have been entitled to—and was, in fact, actually awarded—under the SVOG Program.

## JURISDICTION AND VENUE

16.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents federal questions under the APA.

17.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(e)(1).

18.     This Court has authority to issue declaratory and injunctive relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

19.     Imaginarium is a Florida limited liability company with a principal place of business in Salt Lake County, Utah.

20.     The United States Small Business Administration is an independent agency of the federal government.

21.     Isabella Casillas Guzman is the Administrator of the United States Small Business Administration. Administrator Guzman is named a party to this action in her official capacity.

4

**FACTUAL ALLEGATIONS**

*Shuttered Venue Operators Grant Program*

22.    The Act, signed into law on December 27, 2020, included $15 billion for grants to operators of shuttered venues. Pub. L. No. 116-260 § 324. The American Rescue Plan, enacted March 11, 2021, amended the Act by providing an additional $1,249,500,000.00 for SVOG awards. Pub. L. No. 117-2 § 5005(a).

23.    SVOG awards may be used for specified business expenses, including payroll, rent, and utility payments, that are incurred between March 1, 2020, and December 31, 2021. 15 U.S.C. §§ 9009a(d)(1)(A)(i), (d)(2).

24.    An eligible entity may receive an SVOG award in an amount equal to 45 percent of its gross earned revenue in 2019 or, if it began operations after January 1, 2019, in an amount equal to its average 2019 monthly gross earned revenue multiplied by 6, up to a maximum award of $10 million. 15 U.S.C. § 9009a(c)(1)(A).

25.    Eligible businesses with 2021 first quarter revenues of no more than 30% of their 2019 first quarter revenues are eligible for supplemental grants in the amount of 50 percent of the original award amount, up to a maximum combined initial and supplemental SVOG award amount of $10 million. 15 U.S.C. § 9009a(b)(3)(A); SBA, *SBA Opens Supplemental Grant Applications for Shuttered Venue Operators Grant Awardees* (Aug. 27, 2021), https://www.sba.gov/article/2021/aug/27/sba-opens-supplemental-grant-applications-shuttered-venue-operators-grant-awardees. Supplemental awards can be used for costs incurred through June 30, 2022. 15 U.S.C. § 9009a(d)(1)(A)(ii).

26.     Eligible entities under the Act include live venue operators and promoters, such as

Imaginarium, as well as theatrical producers, live performing arts organization operators,

museum operators, motion picture theater operators, and talent representatives. 15 U.S.C.

§ 9009a(a)(1)(A).

27.     The Act requires that businesses meet the following general eligibility criteria:

    a.   The business "was fully operational . . . on February 29, 2020." 15 U.S.C.

        § 9009(a)(1)(A)(i)(I).

    b.   The business had "a gross earned revenue during the first, second, third, or,

        only with respect to an application submitted on or after January 1, 2020,

        fourth quarter in 2020, that demonstrates not less than a 25 percent reduction

        from the gross earned revenue of [the business]." *Id.* § 9009a(a)(1)(A)(i)(II).

    c.   As of the date of the grant award under the Act, the business "is or intends to

        resume organizing, promoting, producing, managing, or hosting future live

        events . . . ." *Id.* § 9009a(a)(1)(A)(ii)(I).

    d.   The business must "not have, or is majority owned or controlled by an entity

        with, any of the following characteristics: (aa) Being an issuer, the securities

        of which are listed on a national securities exchange. (bb) Receiving more

        than 10 percent of gross revenue from Federal funding during 2019, excluding

        amounts received by the [business] under the Robert T. Stafford Disaster

        Relief and Emergency Assistance Act (42 U.S.C. 5121 et seq.)." *Id.*

        § 9009a(a)(1)(A)(vi)(I).

e. The business "does not have, or is not controlled by an entity with, more than 2 of the following characteristics: (aa) Owning or operating venues, relevant museums, motion picture theaters, or talent agencies or talent management companies in more than 1 country. (bb) Owning or operating venues, relevant museums, motion picture theaters, or talent agencies or talent management companies in more than 10 States. (cc) Employing more than 500 employees as of February 29, 2020, determined on a full-time equivalent basis in accordance with [the definition contained in the Act.]." *Id.* § 9009a(a)(1)(A)(vi)(II).

28. The Act also excludes businesses from eligibility that "present live performances of a prurient sexual nature" or "derives, directly or indirectly, more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature." 15 U.S.C. § 9009a(a)(1)(B).

29. The Act also provides that for a live venue operator or promoter that is not a nonprofit to be eligible, the operator or promoter must satisfy five additional specific criteria: (1) have a defined performance and audience space; (2) use mixing equipment, a public address system, and a lighting rig; (3) engage one or more individuals to carry out at least two of the following roles: sound engineer, booker, promoter, stage manager, security personnel, or box office manager; (4) sell tickets or impose a cover charge to attend most performances and pay artists fairly; and (5) market performances through listings in printed or electronic publications, on websites, by mass email, or on social media. 15 U.S.C. § 9009a(a)(1)(A)(iii).

30.     The SBA further defined eligibility through general criteria and specific eligibility criteria by entity type in the SBA's SVOG Eligibility Matrix ("Eligibility Matrix").

31.     The Eligibility Matrix reiterates the Act's general eligibility criteria and provides two additional general eligibility criteria that apply to all applicants. Specifically, the business "[m]ust not be currently suspended or debarred from contracting with the Federal government or receiving Federal grants or loans," and "[m]ust not have . . . in the past 5 years: (1) been convicted . . . (2) pleaded guilty . . . (3) pleaded nolo contendere . . . ." SBA, SVOG Eligibility Matrix, https://www.sba.gov/sites/default/files/2021-07/SVOG_EligibilityMatrix_v2%20final-508_0.pdf (omissions in original).

32.     The Eligibility Matrix sets forth the following eligibility criteria applicable to live-venue operators:

a.   The business "[m]ust own a venue and/or operate a venue on behalf of an owner."

b.   The business "[m]ust have principal business activity as either: (1) hosting live concerts, comedy shows, theatrical productions or other events by performing artists with not less than 70% of the Live Venue Operator's earned revenue coming from ticket sales/cover charges, sales of merchandise/food/beverage (incl. alcohol), production fees/reimbursements, and/or nonprofit educational initiatives[; or] (2) selling tickets to live concerts, comedy shows, theatrical productions, or other events by performing artists an average of not less than 60 days before the show date."

  c. The business "[m]ust be either (1) Not a nonprofit, and most performances require a ticket purchase or cover charge [or] (2) A nonprofit, and performances are produced and managed by paid employees."

  d. The business "[m]ust market performances via print or electronic means."

  e. The business "[m]ust pay performers based on a percentage of sales, a guarantee, or other mutually beneficial arrangement other than complimentary food and beverage."

  f. "The venue used for performance must have a defined performance space (e.g., a stage or roped off area)."

  g. "The venue used for performance must have a defined audience space (e.g., standing or seating area)."

  h. "The venue used for performance must have sound mixing equipment."

  i. "The venue used for performance must have a public address system."

  j. "The venue used for performance must have a lighting rig."

  k. "The venue used for performance must have at least one individual who performs at least two of the following roles: (1) Sound engineer (2) Booker (3) Promoter (4) Stage manager (5) Security personnel (6) Box office manager."

SBA, SVOG Eligibility Matrix, https://www.sba.gov/sites/default/files/2021-07/SVOG_EligibilityMatrix_v2%20final-508_0.pdf.

  33. The Eligibility Matrix sets forth the following eligibility criteria applicable to live-venue promoters:

a.  The business "[m]ust organize live events by performing artist by doing <u>all</u> of the following: (1) renting or owning a performance site (2) contracting with artists or a production company for the performance (3) marketing the events (4) collecting an admission fee or gate receipts."

b.  The business "[m]ust have <u>both:</u> (1) a profit interest (net income or loss interest) in the live event's presentation (2) sole or joint rights to control the financial terms of the live event's presentation, use of the venue, and/or marketing of the event." (emphasis in original).

c.  The business "[m]ust have the principal business activity as either: (1) Selling tickets to live concerts, comedy shows, theatrical productions, or other events by performing artists an average of not less than 60 days before the show date[; or] (2) Promoting live concerts, comedy shows, theatrical productions, or other events by performing artists with not less than 70% of the Promoter's earned revenue coming from ticket sales/cover charges, sales of merchandise/food/beverage (incl. alcohol), production fees/reimbursements, and/or nonprofit educational initiatives."

d.  The business "[m]ust require a ticket purchase or cover charge for most performances."

e.  The business "[m]ust market performances via print or electronic means."

f.  The business "[m]ust pay performers based on a percentage of sales, a guarantee, or other mutually beneficial arrangement other than [complimentary] food and beverage."

10

g.  "The venue used for performance must have a defined performance space
    (e.g., a stage or roped-off area)."

h.  "Most venues used for performance must have a defined audience space (e.g.,
    standing or seating area)."

i.  "Most venues used for performance must have sound mixing equipment."

j.  "Most venues used for performance must have a public address system."

k.  "Most venues used for performance must have a lighting rig."

l.  "Most venues used for performance must have at least one individual who
    performs at least two of the following roles: (1) Sound engineer (2) Booker
    (3) Promoter (4) Stage manager (5) Security personnel (6) Box office
    manager."

SBA, SVOG Eligibility Matrix, https://www.sba.gov/sites/default/files/2021-
07/SVOG_EligibilityMatrix_v2%20final-508_0.pdf.

34.   An entity's NAICS code is "not a determining factor for SVOG eligibility," but
"is one of many pieces of information the SBA may draw upon when conducting a broad-based
examination of an applicant's principal business activity." SBA, Shuttered Venue Operators
Grants Frequently Asked Questions 25, https://www.sba.gov/sites/default/files/2021-04/4-8-
21%20SVOG%20FAQ%20FINAL.pdf (April 8, 2021).

35.   Upon information and belief, there is no official mechanism to change an entity's
NAICS code.

*Imaginarium's Business*

36.     Imaginarium is a live-event production company domiciled in Utah that operates and promotes events in California, Florida, Georgia, Indiana, Michigan, and Wisconsin.

37.     Imaginarium shares certain owners with Dan Farr Productions LLC ("DFP").

38.     DFP is a is a live-event production company domiciled in Utah that operates and promotes FanX and a wide variety of related events in Utah.

39.     FanX draws more than 100,000 attendees from around the world to Salt Lake City, Utah, and is not only the most attended Utah convention but also one of the largest of its kind in North America.

40.     The FanX event itself and the tourism the event draws are both vital to Utah's economy, as evidenced by the declarations of former Congressman and former Salt Lake County Mayor Benjamin McAdams and Utah Attorney General Sean Reyes, attached hereto as Exhibits A and B respectively. For instance, the FanX Salt Lake Comic Convention has an estimated total economic impact of more than $30 million to the State of Utah.

41.     Having identical businesses, Imaginarium's and DFP's events meld arts, culture, and entertainment—bringing together performing artists, celebrities, authors, speakers, and thousands of attendees from around the world to create a variety of memorable and rewarding experiences.

42.     For these events, Imaginarium and DFP contract with local, national, and global talent to provide entertainment via shows, lectures, presentations, music, and a variety of other performances and activities.

43.     In organizing, promoting, and hosting these live events, Imaginarium and DFP function as "Live Venue Operators or Promoters," meeting all general and specific SVOG eligibility criteria defined in the Act and the SVOG Eligibility Matrix.

44.     Specifically, Imaginarium and DFP:

a.   were fully operational on February 29, 2020;

b.   were currently open as of the date of their applications and remain open as of the date of this filing;

c.   experienced at least a 25% reduction in gross earned revenue during at least one quarter of 2020, compared to 2019;

d.   do not have more than 10% of 2019 income come from Federal resources;

e.   do not own or operate a venue in more than country, do not own or operate venues in more than 10 states, and do not have more than 500 full-time equivalent employees;

f.   are not currently suspended or debarred from contracting with the Federal government or receiving Federal grants or loans;

g.   have not been convicted, pleaded guilty, or pleaded nolo contendere in the past 5 years;

h.   do not present live performances of a prurient sexual nature or derive directly or indirectly more than a de minimis gross revenue through the sale of products of a prurient sexual nature;

i.   operate a venue on behalf of an owner;

j.  have a principal business activity of hosting events by performing artists with not less of 70% of Imaginarium's and DFP's independent earned revenue coming from ticket sales/cover charges, sales of merchandise/food/beverage (including alcohol), production fees/reimbursements, and/or nonprofit educational initiatives; and has a principal business activity of selling tickets to events by performing artists an average of not less than 60 days before the show date;

k.  are not nonprofits, and most performances require a ticket purchase or cover charge;

l.  market performances via print and electronic means;

m.  pay performers based on a percentage of sales, a guarantee, or other mutually beneficial arrangement other than complimentary food and beverage;

n.  use a venue used for performances that has a defined performance space (e.g., a stage or roped off area);

o.  use a venue for performances that has a defined audience space (e.g., standing or seating area);

p.  use a venue for performances that has sound mixing equipment, a public address system, and a lighting rig;

q.  use a venue for performances that has at least one individual who performs the following roles: sound engineer, booker, promoter, stage manager, security personnel, and box office manager;

    r.   organize events by performing artists by renting a performance site, contracting with artists or a production company for the performance, marketing the events, and collecting an admission fee or gate receipts; and

    s.   have a profit interest in the live event's presentation and sole rights to control the financial terms of the live event's presentation, use of the venue, and/or marketing of the event.

45.    When Imaginarium was acquired, the NAICS code that former ownership attributed to Imaginarium (451120 – Hobby, Toy, and Game Stores) did not reflect Imaginarium's recent business.

46.    Imaginarium's corrected NAICS code is 711300 – Promoters of Performing Arts, Sports, and Similar Events with Facilities), reflects its actual business purpose throughout recent history and dating back many years.

*Imaginarium's Application, the SBA's Approval, and Subsequent Revocation*

47.    On April 26, 2021, Imaginarium submitted its Application to the SVOG Program.

48.    That same day, Imaginarium's affiliate, DFP, submitted its own Application to the SVOG Program.

49.    On July 13, 2021, the SBA changed the Application status in Imaginarium's SVOG Portal to "Awarded," with a grant amount of $1,611,445.16 and with a term start date of July 13, 2021, and a term end date of December 31, 2021.

50.    The same day, the SBA also notified DFP that its SVOG grant application had been approved.

51.     On July 14, 2021, the SBA sent an email to Imaginarium stating, "Congratulations once again on your Shuttered Venue Operator's Grant!" ("July 14 Email").

52.     The July 14 Email also stated that, "[a]s an *awardee* and in alignment with our goal to provide additional communication directly with you, we wanted to share a few program updates and some new details coming soon" (emphasis added).

53.     The July 14 Email explained that "grant fund disbursements are, on average, taking about four to five days once all required documentation is received," and that the SBA would soon "open the program for supplemental awards, which will provide the opportunity for *you* as a *grantee* to extend your timeline and request additional funding, if eligible" (emphasis added).

54.     On July 19 and 26, 2021, the SBA published a list of SVOG recipients. The SBA listed Imaginarium on both publications as an SVOG recipient on lines 2393 and 2650 of each spreadsheet, respectively.

55.     Upon information and belief, the SBA has also awarded SVOG funds to numerous other similarly situated live-event production companies with business activities that are essentially identical to Imaginarium and DFP.

56.     Upon information and belief, the SBA has also awarded SVOG funds to numerous ineligible entities.

57.     On July 28, 2021, Imaginarium emailed the SBA to request that the award paperwork and action items be added to Imaginarium's SVOG Portal to proceed with disbursement of the award.

58.    On July 29, 2021, the SBA responded to Imaginarium that, "[f]or the status of your application[,] log-in to your SVOG Portal account using the email address/account used to establish your account. SBA will send SVOG application status changes via email."

59.    On July 30, 2021, the SBA sent an email to Imaginarium stating, "Congratulations! Your Shuttered Venue Operator's Grant is approved." This email also included instructions for receiving Imaginarium's disbursement: (1) "Watch the entirety of the Post-Award Information Session"; (2) "Upload Initialed and Signed Program Assurances"; and (3) "Upload Signed and Dated Notice of Award."

60.    Later that same day on July 30, 2021, the SBA issued Form 1222, Notice of Award, to Imaginarium, confirming the total approved budget amount of $1,611,445.16, with a project date from July 13, 2021, through December 31, 2021 ("Award").

61.    Imaginarium immediately confirmed the Award, watched the entirety of the Post-Award Information Session, uploaded the signed Form 1222, and uploaded the initialed and signed Program Assurances on July 30, 2021.

62.    That same day, the SBA told Imaginarium that the "SBA has fully reviewed your request for SVOG funding, but additional information and technical corrections are required to confirm your eligibility. Please respond to the Action Item SBA has created for you in the SVOG Portal by 8/14/2021 at 8 PM PT to move your application forward."

63.    Imaginarium immediately sought clarification and informed the SBA that Imaginarium's SVOG Portal did not contain any information regarding which, if any, technical corrections were required.

64.     Imaginarium also promptly uploaded a document in the SVOG Portal informing the SBA that their request for purported technical corrections lacked information or attachments and asking the SBA for clarification on what, if any, information was sought by the SBA.

65.     The SBA failed to respond to Imaginarium's request for clarification regarding which, if any, purported technical corrections were required.

66.     On July 26, 2021, the SBA disbursed all of DFP's awarded funds.

67.     In reliance on the SBA's Form 1222, Notice of Award, the SBA's two publications listing Imaginarium as an award recipient, and the SBA's numerous correspondences referring to Imaginarium as an "awardee" and "grantee," Imaginarium endeavored to spend the approved budget amount of $1,611,445.16 on approved business expenses by the deadline of December 31, 2021.

68.     On July 30 through August 1, 2021, Imaginarium held the Tampa Bay Comic Convention, which was the first of its three events in 2021.

69.     On August 6 through 8, 2021, Imaginarium held the Atlanta Comic Convention, which was the second of its three events in 2021.

70.     On August 6, 2021, Imaginarium contacted the SBA again to inform the SBA that the action item and technical correction in Imaginarium's SVOG Portal still provided no information about any purported technical correction sought by the SBA.

71.     The SBA responded later that day, again failing to identify any purported technical correction needed, and merely stated that Imaginarium's "application is currently being processed" and that Imaginarium "will receive an email notification when there is a change to your application status."

72.     The SBA has never informed Imaginarium whether any purported technical correction was actually required, nor did the SBA provide any information about what purported technical correction was needed.

73.     On August 14, 2021, Imaginarium received an email stating, "You have the option to file an appeal of the decline decision for your SVOG application. If you would like to do this, please complete the Action Item in the SVOG Portal by 8/29/2021 at 8 PM PT."

74.     Imaginarium never received a decline decision for the Application nor any other information explaining why the SBA revoked Imaginarium's already approved application.

75.     On August 27, 2021, despite having never received an actual denial or any information providing a substantive basis for the purported denial, Imaginarium submitted a justification statement and supporting documentation (collectively, "Appeal") demonstrating that Imaginarium meets all general and specific criteria under the SVOG Program.

76.     In its Appeal, Imaginarium addressed each of the Act's general and specific criteria applicable to live venue operators and promoters and provided additional documentation to substantiate that Imaginarium meets all such criteria.

77.     Imaginarium also addressed each of the SVOG Eligibility Matrix's general criteria, the specific criteria applicable to live-venue operators and live-venue promoters, and provided additional documentation to substantiate eligibility.

78.     In its Appeal, Imaginarium also explained that it had never received any actual information regarding any purported defects or technical corrections and requested that, to the extent the retroactive revocation of the Award was not the result of an administrative error, the

SBA inform Imaginarium of the purported basis for the denial and provide Imaginarium with an opportunity to respond.

79.     On October 15 through 17, 2021, Imaginarium held the Indiana Comic Convention, which was the last of its three events in 2021.

80.     On October 27, 2021, the SBA declined Imaginarium's appeal and noted that Imaginarium's application "was declined, at least in part" because Imaginarium "[d]id not meet the principal business activity standard for the entity type under which applied" and "[d]id not meet one or more of the eligibility criteria specific to the entity type under which applied." The SBA provided no other information to Imaginarium to support retroactively denying the SVOG award to Imaginarium.

81.     In November 2021, after the SBA declined Imaginarium's appeal without providing an opportunity for Imaginarium to respond, Imaginarium informed the SBA that it intended to file this Complaint, along with a motion for temporary restraining order and preliminary injunction ("Motion"), but was willing to engage with the SBA to correct the SBA's erroneous denial of its Application without formal litigation.

82.     In reliance on the SBA's assurances that it would review Imaginarium's Application, Imaginarium delayed filing this Complaint and the Motion against the SBA.

83.     On November 29, 2021, responding to numerous requests from Imaginarium regarding the dwindling SVOG funds, the SBA represented in writing to Imaginarium that "from a programmatic perspective, we are not at all at risk of running out of SVOG funding before this issue is resolved."

84.     In reliance on the SBA's assurance that SVOG funding would be available to Imaginarium in the event Imaginarium is found eligible for such funds, Imaginarium again delayed filing this Complaint and the Motion against the SBA.

85.     On December 14, 2021, the SBA informed Imaginarium that, upon the SBA's review of the Application and Appeal, Imaginarium's Application remains declined "at least in part" because Imaginarium: "[d]id not meet the principal business activity standard for the entity type under which applied;" and "[d]id not meet one or more of the eligibility criteria specific to the entity type under which applied."

86.     The SBA's December 14, 2021, correspondence also stated, "In July 2021, SBA erroneously issued a Notice of Award for your SVOG application, which was discovered prior to disbursement of funds. Thus, the SBA has taken appropriate actions to correct that error."

87.     The SBA claimed that "Imaginarium does not, as principal business activity, organize, promote, produce, manage, or host live concerts, comedy shows, theatrical productions, or other events by performing artists," purportedly because: "Imaginarium operates comic book conventions in several states, including Atlanta, Tampa Bay, and San Francisco"; "[t]he conventions primarily feature talks by comics and entertainment industry speakers, photograph and autograph opportunities, and retail vending"; and "[a]lthough the conventions may include performances by musicians or comedians, these activities are secondary or supplemental."

88.     The SBA incorrectly asserted that Imaginarium's ticket sales are "not for live performances."

89.     The SBA also incorrectly stated that "Imaginarium did not meet one or more of the eligibility criteria specific to the entity type under which applied. For example, Imaginarium's venues do not have defined performance and audience spaces as required by the SVOG legislation."

90.     The SBA's explanation of its denial of SVOG funds to Imaginarium is erroneous.

91.     The SBA's denial of Imaginarium's Appeal is the agency's final decision.

92.     Meanwhile, DFP—which engages in identical business activities as Imaginarium—received and has spent its awarded funds without issue.

93.     Upon information and belief, Imaginarium is aware of numerous other entities with businesses essentially identical to Imaginarium and DFP that have received SVOG awards.

94.     Upon information and belief, Imaginarium is aware of numerous ineligible entities that have nevertheless received SVOG awards.

95.     While Imaginarium has been struggling to correct SBA's erroneous denial of its Application, additional awardees have become eligible for and have received supplemental SVOG awards.

96.     Upon information and belief, such supplemental awards have been approximately fifty percent of the original award amount.

97.     On November 9, 2021, DFP received a supplemental award, which is 50 percent of DFP's initial award.

98.     Upon information and belief, Imaginarium therefore also has been deprived of a supplemental award of approximately $841,690.14.

99.     On December 17, 2021, the SBA through counsel again told Imaginarium in writing that "it is confident that enough unspent money remains in its SVOG program to fully cover any awards that might possibly be ordered by any court."

100.    In reliance on the SBA's repeated representations that enough funds exist to satisfy Imaginarium's incorrectly denied Application, Imaginarium chose to forego filing its Motion seeking preservation of sufficient SVOG funds for purposes of any award to Imaginarium.

## CLAIMS FOR RELIEF

101.    The courts recognize a strong presumption favoring judicial review of administrative action.

102.    The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

103.    The APA provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

104.    The APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

## FIRST CAUSE OF ACTION
### (Breach of Contract)

105.    Imaginarium incorporates the allegations of paragraphs 1 through 100 of this Complaint by reference, as though fully set forth herein.

106. The Notice of Award constitutes a binding and enforceable contract to which the SBA expressly and impliedly agreed by issuing the Notice of Award to Imaginarium in the amount of $1,611,445.16 with a term start date of July 13, 2021, and a term end date of December 31, 2021, repeatedly informing Imaginarium that it was an SVOG award recipient, and publishing Imaginarium as an award recipient on two separate SBA publications.

107. Imaginarium fully performed under the agreement.

108. The SBA materially breached the Agreement by revoking the Award without explanation and subsequently denying Imaginarium's Appeal, as fully set forth in paragraphs 47 through 80 of this Complaint.

109. As a direct and proximate result of the SBA's material breach of the Notice of Award, Imaginarium has been damaged in an amount to be determined at trial but in no event less than $1,611,445.16.

**SECOND CAUSE OF ACTION**
**(Promissory Estoppel)**

110. Imaginarium incorporates the allegations of paragraphs 1 through 100 of this Complaint by reference, as though fully set forth herein.

111. In the event that Imaginarium's above-asserted cause of action for breach of contract is inadequate to make Imaginarium whole, thereby leaving Imaginarium without any adequate remedy at law, Imaginarium hereby pleads in the alternative.

112. The SBA awarded Imaginarium an SVOG grant in the amount of $1,611,445.16 with a term start date of July 13, 2021, and a term end date of December 31, 2021, and promised to disburse the awarded amount to Imaginarium upon receipt and execution of Form 1222,

Notice of Award by Imaginarium, which Imaginarium promptly executed and delivered to the SBA.

113.    The SBA reasonably expected its promises to induce action on the part of Imaginarium.

114.    Imaginarium reasonably relied upon the SBA's promise to disburse the awarded funds to Imaginarium's detriment, including without limitation by seeking to spend the awarded amount by the applicable deadline after receiving notice from the SBA that the SBA approved Imaginarium's Application, published Imaginarium as an award recipient on official SBA publications on July 19 and 26, 2021, and issued Form 1222, Notice of Award to Imaginarium.

115.    The SBA knew or should have known that Imaginarium would rely on its promises, including without limitation the SBA's promise to disburse Imaginarium's award of $1,611,445.16 upon execution of Form 1222 Notice of Award by Imaginarium.

116.    Due to the SBA's failure to fulfill its promises, Imaginarium has suffered damages in an amount to be proven at trial but no less than $1,611,445.16.

## THIRD CAUSE OF ACTION
### (Arbitrary and Capricious Agency Action)

117.    Imaginarium incorporates the allegations of paragraphs 1 through 100 of this Complaint by reference, as though fully set forth herein.

118.    Administrative agencies must provide the grounds for its actions. A failure to do so renders an agency's action arbitrary and capricious.

119.    The SBA approved Imaginarium's Application and issued Form 1222, Notice of Award.

120.    The SBA subsequently purportedly revoked Imaginarium's Award with no explanation.

121.    Prior to receiving a copy of this Complaint, the SBA had not actually provided Imaginarium with any specific reason for denying Imaginarium's Application.

122.    Any purported explanation provided by the SBA to support its denial of Imaginarium's Application and Appeal has been incorrect.

123.    To the extent the SBA's decision on Imaginarium's Application rests on some alleged failure of Imaginarium to establish its eligibility for the SVOG Program under the Act, the SBA's decision conflicts with the evidence of Imaginarium's eligibility in its Application, the SBA's initial decision to award grant funds to Imaginarium based on that Application, and the evidence of Imaginarium's eligibility presented to the SBA in Imaginarium's Appeal.

124.    To the extent the SBA's decision on Imaginarium's Application rests on Imaginarium's NAICS code, Imaginarium specifically identified and explained the correct NAICS code (711300 – Promoters of Performing Arts, Sports, and Similar Events with Facilities) in Imaginarium's Appeal, and/or the SBA erred by not considering the totality of Imaginarium's evidence of its principal business activity and considering only the NAICS code, which "is not a determining factor for SVOG eligibility."

125.    The SBA further erred by treating Imaginarium disparately from similarly situated businesses that were granted SVOG awards—in fact, DFP is an identically situated business that has been awarded SVOG funds, as are numerous other SVOG awardees known by Imaginarium.

126.    For each of these reasons, the SBA's denial of Imaginarium's Application is arbitrary and capricious.

## FOURTH CAUSE OF ACTION
### (Abuse of Discretion / Agency Action Contrary to Law)

127.    Imaginarium incorporates the allegations of paragraphs 1 through 100 of this Complaint by reference, as though fully set forth herein.

128.    Imaginarium meets the Act's definition of a live venue operator and promoter and satisfies the Act's general eligibility criteria for an SVOG award.

129.    Imaginarium meets the SBA's interpretation of a live venue operator and promoter under the Act and satisfies the SBA's eligibility criteria for an SVOG award.

130.    The SBA's denial of Imaginarium's SVOG award request therefore is an abuse of discretion and/or violated the Act and is contrary to law.

## FIFTH CAUSE OF ACTION
### (Agency Decision Unsupported by Substantial Evidence)

131.    Imaginarium incorporates the allegations of paragraphs 1 through 100 of this Complaint by reference, as though fully set forth herein.

132.    The SBA's denial of Imaginarium's award request is not supported by evidence in the record, let alone substantial evidence.

133.    Imaginarium's Application and Appeal presented evidence confirming Imaginarium is eligible for an SVOG award.

134.    The SBA's denial of Imaginarium's award request is thus unsupported by substantial evidence.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Relief)

135.    Imaginarium incorporates the allegations of paragraphs 1 through 100 of this Complaint by reference, as though fully set forth herein.

136.    The SBA breached the Form 1222, Notice of Award and the SBA's agreement to disburse Imaginarium's Award.

137.    The SBA's above-described conduct is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and/or unsupported by substantial evidence.

138.    Imaginarium reasonably relied on the SBA's promises to the detriment of Imaginarium, which has caused damage to Imaginarium.

139.    Imaginarium has no adequate remedy at law with respect to future damages caused by the SBA's conduct.

140.    As a result of the foregoing, Imaginarium is entitled to an Order from this Court including without limitation the following:

      a.   the SBA shall retain appropriations from the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. No. 116-260 § 324) and/or the American Rescue Plan (Pub. L. No. 117-2 § 5005(b)) in an amount sufficient to fund Imaginarium's initial and supplemental awards under the SVOG Program, but no less than $2,452,135.30;

      b.   Imaginarium is eligible for initial, supplemental, and additional SVOG awards;

      c.   the SBA shall consider Imaginarium's Application consistent with applicable law and the evidence before the SBA;

d.  the SBA shall provide Imaginarium with the initial award of $1,611,445.16 in SVOG funds;

e.  the SBA shall provide Imaginarium the opportunity to apply for a supplemental award of SVOG funds;

f.  the SBA shall provide Imaginarium with a supplemental award consistent with other SVOG awardees, but no less than $841,690.14;

g.  the SBA shall provide Imaginarium with any other additional awards consistent with applicable law, the evidence before the SBA, and the additional awards recently made available and provided to other SVOG awardees; and

h.  the SBA shall provide Imaginarium an additional six (6) months to spend any funds remaining from any initial, supplemental, or other additional SVOG award to Imaginarium.

## PRAYER FOR RELIEF

1.  With respect to Imaginarium's First and Second Claims for Relief, for general, compensatory, and actual damages in an amount to be determined at trial but in no event less than $1,611,445.16;

2.  With respect to Imaginarium's Third, Fourth, Fifth, and Sixth Claims for Relief, for the declaratory relief consistent with that described in Imaginarium's Sixth Claim for Relief herein;

3.  For an award of Imaginarium's costs and reasonable attorneys' fees; and

4.  For such other and further relief as is deemed appropriate by this Court.

### **JURY DEMAND**

Imaginarium hereby demands a jury for all issues triable thereto.

RESPECTFULLY SUBMITTED this 23rd day of December 2021.

PARR BROWN GEE & LOVELESS

/s/ *Jonathan O. Hafen*
Jonathan O. Hafen
Michael S. Anderson
Victoria R. Luman
W. Ash McMurray

Attorneys for Imaginarium, LLC